# IN THE COURT OF COMMON PLEAS
## SUMMIT COUNTY, OHIO

| | | |
|---|---|---|
| ERIN CUMMINGS<br>1559 Canadian Ave.<br>Akron, Ohio 44306 | ) )<br>) )<br>) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) )<br>) )<br>) ) | |
| v. | ) )<br>) ) | |
| FERRIOT, INC.<br>1000 Arlington Circle<br>Akron, Ohio 44306 | ) )<br>) )<br>) )<br>) ) | **COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |
| -and- | ) )<br>) ) | |
| **Also serve at:**<br>Ferriot, Inc.<br>c/o ACFB Incorporated<br>200 Public Square, Ste 2300<br>Cleveland, Ohio 44114 | ) )<br>) )<br>) )<br>) )<br>) )<br>) ) | |
| -and- | ) )<br>) ) | |
| MARC KEELER<br>1000 Arlington Circle<br>Akron, Ohio 44306 | ) )<br>) )<br>) )<br>) ) | |
| **Also serve at:**<br>3410 Chestnut Hill Dr.<br>Medina, Ohio 44256 | ) )<br>) )<br>) )<br>) ) | |
| -and- | ) )<br>) ) | |
| MICHELLE QUICK<br>1000 Arlington Circle<br>Akron, Ohio 44306 | ) )<br>) )<br>) )<br>) ) | |
| **Also serve at:**<br>488 Oxford Ave.<br>Akron, Ohio 44310 | ) )<br>) )<br>) )<br>) ) | |
| -and- | ) )<br>) ) | |

The Employee's Attorney.™



KRISTI M. FREDMONSKY                     )
1000 Arlington Circle                    )
Akron, Ohio 44306                        )
                                         )
    **Also serve at:**                   )
    860 Fox Glove Circle                 )
    Barberton, Ohio 44203                )
                                         )
                      Defendants.        )

Plaintiff, Erin Cummings, by and through undersigned counsel, in his Complaint against,

Defendants states and avers the following:

## PARTIES AND VENUE

1.  Erin Cummings was a resident of the city of Akron, county of Summit, state of Ohio when

    these events occurred.

2.  Ferriot, Inc. is a for profit corporation company that conducts substantial business at its

    principal place of business located at 1000 Arlington Circle, Akron, Ohio, 44306.

3.  Ferriot, Inc. is registered in, transact business in, and caused tortious injuries in Summit

    County, Ohio.

4.  Marc Keeler is a resident of the state of Ohio, upon information and belief.

5.  Keeler was, at all times hereinafter mentioned, an individual who was a manager and/or

    supervisor at Ferriot, Inc. who acted directly or indirectly in the interest of Ferriot, Inc.

6.  Ferriot employed Keeler in the position of General Manager.

7.  Keeler was, at all times hereinafter mentioned, an employer within the meaning of

    R.C. 4112.01 et seq.

8.  Keeler made, and/or participated in, the adverse actions asserted, herein.

9.  Michelle Quick is a resident of the state of Ohio, upon information and belief.



10.  Quick was, at all times hereinafter mentioned, an individual who was manager and/or supervisor and who acted directly or indirectly in the interest of Ferriot.

11.  Ferriot employed Quick in the position of Supervisor.

12.  Quick was, at all times hereinafter mentioned, an employer within the meaning of R.C. 4112.01 et seq.

13.  Quick made, and/or participated in, the adverse actions asserted, herein.

14.  Kristi Fredmonsky is a resident of the state of Ohio, upon information and belief.

15.  Fredmonsky was, at all times hereinafter mentioned, an individual who was a manager and/or supervisor with Defendants who acted directly or indirectly in the interest of Defendants.

16.  Defendants employed Fredmonsky in the position of Manager of Human Resources.

17.  Fredmonsky made, or participated in, the adverse actions asserted, herein.

18.  Fredmonsky was, at all times hereinafter mentioned, an employer within the meaning of R.C. 4112.01 et seq.

19.  Fredmonsky made, and/or participated in, the adverse actions asserted, herein.

20.  Material events alleged in this Report occurred in Summit County.

21.  Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. 2307.382(A)(1), (2), and (4).

22.  Venue is proper pursuant to Civ.R. 3(C)(1) and (2).

23.  This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Report.

The Employee's Attorney.<sup>TM</sup>

3



## FACTS

### A. Cummings Was A Good Employee

24. Cummings is a former employee of Ferriot.

25. Ferriot employed Cummings at the main location located at 1000 Arlington Circle, Akron, Ohio, 44306.

26. Cummings began working for Ferriot on or around May 26, 2015.

27. Ferriot employed Cummings as a Material Handler.

28. Cummings was an exemplary employee with no history of meaningful history of discipline.

### B. Cummings' Disability

29. Cummings suffers from a back injury ("Disability").

30. Cummings' Disability affects her spine and legs.

31. Cummings' Disability substantially impaired one or more of his major life activities including lifting, walking, and working.

32. Cummings' Disability is a physical impairment.

33. Cummings' Disability is a disease.

34. Cummings' back injury is a disability.

35. As a result of his back injury, Cummings is and was considered disabled within the meaning in of R.C. 4112.01 et seq.

### C. Cummings Sustains Back Injury While Working At Ferriot

36. On or about May 27, 2020, during the course and scope of her employment at Ferriot, Cummings exited the paint room carrying a 50-pound container of paint and began lifting it into a pot when Cummings experienced an excruciating, disabling pain in her back. ("Work-Related Accident").



37. As a result of Cummings' Work-Related Accident, Cummings' excruciating, and disabling pain in her back were later diagnosed as resulting from a lumbar sprain/strain injury and a cervical sprain/strain injury. ("Work-Related Injuries").

38. As a result of Cummings' Work-Related Injuries, Cummings was immediately disabled and was unable to move and stand straight without assistance.

39. As a result of Cummings' Work-Related Injuries, Cummings' co-worker, Nancy Boil, immediately went to Cummings' aid to assist her.

**D. Cummings Notifies Supervisor, Michelle Quick, About Her Work-Related Accident. Quick Refuses To Make A First Report of Injury. Quick Fails To Get Witness Statements. Quick Fails To Notify Cummings About BWC Rights.**

40. Cummings immediately reported her Work-Related Accident to her supervisor, Michelle Quick. ("Notice of Accident To Quick").

41. In the Notice of Accident To Quick, Cummings told Quick about her Work-Related Accident.

42. In the Notice of Accident To Quick, Cummings told Quick she was experiencing the excruciating, disabling pain resulting from the Work-Related Accident.

43. As a result of the Notice Of Accident To Quick, Quick had notice of Cummings' Work-Related Accident.

44. As a result of the Notice Of Accident To Quick, Quick had notice that Cummings was injured.

45. Quick explained to Cummings that she would not Complete A First Report of Injury because earlier, Cummings complained to her about having shoulder discomfort. ("Quicks' Justification For Refusing To Complete A First Report of Injury").



46. In response to the Notice of Accident To Quick, Quick refused to complete a First Report of Injury.

47. In response to the Note of Accident To Quick, Quick did not complete a First Report of Injury. ("Quicks' Refusal To Complete A First Report of Injury").

48. In response to the Notice Of Accident To Quick, Quick did not take witness statements from other employees who witnessed Cummings Work-Related Accident. ("Quicks' Failure To Obtain Witness Statements").

49. Quick's Justification For Refusing To Complete A First Report of Injury was unrelated to Cummings' Work-Related Accident.

50. In response to the Notice of Accident To Quick, Quick did not notify Cummings of her right to file a workers' compensation ("BWC") claim. ("Quicks' Failure To Notify Cummings Of Her Right To File A BWC Claim").

51. The Ohio Administrative Code imposes a duty upon every employer to assist injured or disabled employees in the preparation and submission of reports for compensation and/or benefits, OAC 4123-3-08(5). ("Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits").

52. Quick had a duty to assist Cummings, who sustained Work-Related Injuries resulting from her Work-Related Accident, in the preparation and submission of reports for BWC compensation and/or BWC benefits.

53. Because Cummings' injuries were disabling, Quick should have completed the first report of injury on behalf of Cummings because Cummings was unable to complete the first report of injury because of her physical Disability.



54. Quick breached the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits when she refused to assist Cummings in the preparation and submission of reports for BWC compensation and/or BWC benefits.

55. Quicks' Justification For Refusing To Complete A First Report of Injury was a breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits.

56. Quicks' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits resulted in the denial and/or delay of receipt of BWC benefits to Cummings.

57. Alternatively, Quicks' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits, denied and/or delayed Cummings' BWC benefits.

58. Quicks' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits was workers' compensation discrimination.

59. Quicks' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits was workers' compensation discrimination done intentionally.

60. Quicks' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits was workers' compensation discrimination done willingly.

61. Quicks' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits was workers' compensation discrimination done knowingly.



62.   Defendants are liable to Cummings for any and all damages resulting from Quicks' breach of the Employer's duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits.

63.   The Ohio Administrative Code provides that an employer may complete the first report of injury in the event that the injured or disabled employee is unable to complete the first report of injury by reason of physical disability, OAC 4123-3-08(4).  ("Employer May Complete First Report of Injury On Behalf of Disabled Employee").

64.   Quick violated BWC Rules when she refused to complete the first report of injury on behalf of Cummings while Cummings was unable to complete the first report of injury for herself because of her physical Disability.

65.   Quicks' violation of BWC Rules by refusing to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for herself because of her physical Disability, was workers' compensation discrimination.

66.   Quicks' violation of BWC Rules by refusing to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for herself because of her physical Disability, was workers' compensation discrimination done intentionally.

67.   Quicks' violation of BWC Rules by refusing to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for herself because of her physical Disability, was workers' compensation discrimination done willingly.

68.   Quicks' violation of BWC Rules by refusing to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for



herself because of her physical Disability, was workers' compensation discrimination done knowingly.

69. Defendants are liable to Cummings for any and all damages resulting from Quicks' refusal to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for herself because of her physical Disability.

70. BWC Rules require employers to obtain witness statements from witnesses who observed and/or assisted in the Work-Related Accident.

71. Cummings' co-worker, Nancy Boil, assisted Cummings during her Work-Related Accident.

72. Cummings' co-worker, Nancy Boil, was a witness because she assisted Cummings in Cummings' Work-Related Accident.

73. Quick was required by BWC Rules to obtain witness statements from Nancy Boil because Nancy was a witness who assisted Cummings in Cummings' Work-Related Accident.

74. Quick failed to obtain a witness statement from Nancy Boil.

75. Quick's Failure To Obtain Witness Statements from Nancy Boil was a violation of BWC requirements.

76. Quicks' Failure To Obtain Witness Statements from Nancy Boil was a violation of BWC requirements done intentionally.

77. Quicks' Failure To Obtain Witness Statements from Nancy Boil was a violation of BWC requirements done willingly.

78. Quicks' Failure To Obtain Witness Statements from Nancy Boil was a violation of BWC requirements done knowingly.

79. Quicks' Failure to Obtain Witness Statements from other witnesses was workers' compensation discrimination.



80. BWC Rules require Quick to obtain witness statements from other witnesses who may have witnessed and/or assisted Cummings in Cummings' Work-Related Accident.

81. Other witnesses may have witnessed Cummings' Work-Related Accident.

82. Quick failed to obtain witness statements from other witnesses who may have witnessed Cummings' Work-Related Accident.

83. Quicks' Failure to Obtain Witness Statements from other witnesses who may have witnessed Cummings' Work-Related Accident was workers' compensation discrimination done intentionally.

84. Quicks' Failure to Obtain Witness Statements who may have witnessed Cummings' Work-Related Accident was workers' compensation discrimination done willingly.

85. Quicks' Failure to Obtain Witness Statements who may have witnessed Cummings' Work-Related Accident was workers' compensation discrimination done knowingly.

86. Other witnesses may have assisted Cummings during her Work-Related Accident.

87. Quick failed to obtain witness statements from other witnesses who may have assisted Cummings during her Work-Related Accident.

88. Defendants are liable to Cummings for any and all damages resulting from Quicks' Failure To Obtain Witness Statements from other witnesses who may have witnessed Cummings' Work-Related Accident.

89. BWC Rules require Quick to Notify Cummings of her right to file a BWC claim.

90. Quicks' Failure To Notify Cummings Of Her Right To File A BWC Claim resulted in the denial and/or delay of receipt of BWC benefits to Cummings.

91. Alternatively, Quicks' Failure to Notify Cummings Of Her Right To File A BWC Claim denied and/or delayed BWC benefits to Cummings.



Sandra Kurt, Summit County Clerk of Courts

92.  Quicks' Failure To Notify Cummings Of Her Right To File A BWC Claim was workers' compensation discrimination.

93.  Quicks' Failure To Notify Cummings Of Her Right To File A BWC Claim was workers' compensation discrimination done intentionally.

94.  Quicks' Failure To Notify Cummings Of Her Right To File A BWC Claim was workers' compensation discrimination done willingly.

95.  Quicks' Failure To Notify Cummings Of Her Right To File A BWC Claim was workers' compensation discrimination done knowingly.

96.  Defendants are liable to Cummings for any and all damages resulting from Quicks' Failure To Notify Cummings Of Her Right To File A BWC Claim.

**E.  Cummings Notifies General Manager, Marc Keeler, About Her Work-Related Accident.  Keeler Fails To Make A First Report of Injury.  Keeler Fails To Get Witness Statements.   Keeler Fails To Notify Cummings About BWC Rights.**

97.  Cummings tried to continue working but notified Mark Keeler, General Manager, at 9:30 a.m. that she needed to leave work early because of her Work-Related Accident.  ("Notice of Accident To Keeler").

98.  In the Notice of Accident To Keeler, Cummings told Keeler about her Work-Related Accident.

99.  In the Notice of Accident To Keeler, Cummings told Keeler she was experiencing the excruciating, disabling pain resulting from the Work-Related Accident.

100.  As a result of the Notice Of Accident To Keeler, Keeler had notice of Cummings' Work-Related Accident.

101.  As a result of the Notice Of Accident To Keeler, Keeler had notice that Cummings was injured.



102. In response to Cummings' Notice of Accident to Keeler, Keeler gave Cummings the option to take vacation time to cover lost time due to her Work-Related Injuries. ("Keeler Gives Cummings Option To Use Vacation Leave To Cover Lost Time For Disability").

103. In response to the Notice of Accident To Keeler, Keeler failed to complete a First Report of Injury. ("Keelers' Failure To Complete A First Report of Injury").

104. In response to the Notice Of Accident To Keeler, Keeler did not take witness statements from other employees who witnessed Cummings Work-Related Accident. ("Keelers' Failure To Obtain Witness Statements").

105. In response to the Notice of Accident To Keeler, Keeler did not notify Cummings of her right to file a workers' compensation ("BWC") claim. ("Keelers' Failure To Notify Cummings Of Her Right To File A BWC Claim").

106. Keeler had a duty to assist Cummings, who sustained Work-Related Injuries resulting from her Work-Related Accident, in the preparation and submission of reports for BWC compensation and/or BWC benefits.

107. Because Cummings' injuries were disabling, Keeler should have completed the first report of injury on behalf of Cummings because Cummings was unable to complete the first report of injury because of her physical Disability.

108. Keeler breached the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/Or Benefits when she refused to assist Cummings in the preparation and submission of reports for BWC compensation and/or BWC benefits.

109. Keelers' Justification For Refusing To Complete A First Report of Injury was a breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits.



110. Keelers' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits resulted in the denial and/or delay of receipt of BWC benefits to Cummings.

111. Alternatively, Keelers' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits, denied and/or delayed Cummings' BWC benefits.

112. Keelers' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits was workers' compensation discrimination.

113. Keelers' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits was workers' compensation discrimination done intentionally.

114. Keelers' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits was workers' compensation discrimination done willingly.

115. Keelers' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits was workers' compensation discrimination done knowingly.

116. Defendants are liable to Cummings for any and all damages resulting from Keelers' breach of the Employer's duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits.

117. Keeler violated BWC Rules when he failed to complete the first report of injury on behalf of Cummings while Cummings was unable to complete the first report of injury for herself because of her physical Disability.

The Employee's Attorney.™



118. Keelers' violation of BWC Rules by failing to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for herself because of her physical Disability, was workers' compensation discrimination.

119. Keelers' violation of BWC Rules by failing to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for herself because of her physical Disability, was workers' compensation discrimination done intentionally.

120. Keelers' violation of BWC Rules by failing to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for herself because of her physical Disability, was workers' compensation discrimination done willingly.

121. Keelers' violation of BWC Rules by failing to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for herself because of her physical Disability, was workers' compensation discrimination done knowingly.

122. Defendants are liable to Cummings for any and all damages resulting from Keelers' refusal to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for herself because of her physical Disability.

123. Keeler was required by BWC Rules to obtain witness statements from Nancy Boil because Nancy was a witness who assisted Cummings in Cummings' Work-Related Accident.

124. Keeler failed to obtain a witness statement from Nancy Boil.

125. Quick's Failure To Obtain Witness Statements from Nancy Boil was a violation of BWC requirements.



*Sandra Kurt, Summit County Clerk of Courts*

126. Keelers' Failure To Obtain Witness Statements from Nancy Boil was a violation of BWC requirements done intentionally.

127. Keelers' Failure To Obtain Witness Statements from Nancy Boil was a violation of BWC requirements done willingly.

128. Keelers' Failure To Obtain Witness Statements from Nancy Boil was a violation of BWC requirements done knowingly.

129. Keelers' Failure to Obtain Witness Statements from other witnesses was workers' compensation discrimination.

130. Keeler failed to obtain witness statements from other witnesses who may have witnessed Cummings' Work-Related Accident.

131. Keelers' Failure to Obtain Witness Statements from other witnesses who may have witnessed Cummings' Work-Related Accident was workers' compensation discrimination done intentionally.

132. Keelers' Failure to Obtain Witness Statements who may have witnessed Cummings' Work-Related Accident was workers' compensation discrimination done willingly.

133. Keelers' Failure to Obtain Witness Statements who may have witnessed Cummings' Work-Related Accident was workers' compensation discrimination done knowingly.

134. Keeler failed to obtain witness statements from other witnesses who may have assisted Cummings during her Work-Related Accident.

135. Defendants are liable to Cummings for any and all damages resulting from Keelers' Failure To Obtain Witness Statements from other witnesses who may have witnessed Cummings' Work-Related Accident.

The Employee's Attorney.™



**F.** **Cummings Seeks Medical Treatment And Is Placed Off Work. Human Resources Manager, Kristy Fredmonsky, Gives Cummings Option To Cover Lost Time Off Using Her Personal Time Off ("PTO").**

136. Cummings immediately visited urgent care where her doctor diagnosed her with a lumbar sprain/strain injury and a cervical sprain/strain injury. ("Medical Diagnosis").

137. As a result of Cummings' Work-Related Injuries, Cummings' doctor placed Cummings off work for three days as a result of her Work-Related Injuries. ("Lost Time Off No. 1").

138. As a result of Cummings' Lost Time Off No. 1, Cummings called Defendants and left a voicemail informing them of her Medical Diagnosis and her need to be off work for three days. ("Call to HR Requesting Time Off Due to Work-Related Injury").

139. As a result of Cummings' Lost Time Off No. 1, Manager of Human Resources, Kristi Fredmonsky, called Cummings and gave her the option to use PTO time to cover her lost time off work.

140. Defendants are a covered employer under the Family Medical Leave Act ("FMLA").

141. Cummings was eligible to have her Lost Time Off No. 1 covered under the FMLA.

142. Alternatively, Fredmonsky failed to cover Cummings' Lost Time Off No. 1 under the FMLA.

143. Alternatively, Fredmonsky's failure to cover Cummings' Lost Time Off No. 1 under the FMLA was FMLA Interference and FMLA Retaliation.

144. Alternatively, Fredmonsky's failure to cover Cummings' Lost Time Off No. 1 under the FMLA was FMLA Interference and FMLA Retaliation done intentionally.

145. Alternatively, Fredmonsky's failure to cover Cummings' Lost Time Off No. 1 under the FMLA was FMLA Interference and FMLA Retaliation done willingly.

146. Alternatively, Fredmonsky's failure to cover Cummings' Lost Time Off No. 1 under the FMLA was FMLA Interference and FMLA Retaliation done knowingly.

The Employee's Attorney.™



147. As a result of Cummings' Call To HR Requesting Time Off Due To Work-Related Injury, Fredmonsky had notice of Cummings' Work-Related Accident.

148. As a result of the Notice Of Accident To Fredmonsky, Fredmonsky had notice that Cummings was injured.

149. In response to Cummings' Call To HR Requesting Time Off Due To Work-Related Injury, Fredmonsky gave Cummings the option to take PTO to cover lost time due to her Work-Related Injuries. ("Fredmonsky Gives Cummings Option To Use PTO To Cover Lost Time For Disability").

150. In response to the Notice of Accident To Fredmonsky, Fredmonsky failed to complete a First Report of Injury. ("Fredmonskys' Failure To Complete A First Report of Injury").

151. In response to the Notice Of Accident To Fredmonsky, Fredmonsky did not take witness statements from other employees who witnessed Cummings Work-Related Accident. ("Fredmonskys' Failure To Obtain Witness Statements").

152. In response to the Notice of Accident To Fredmonsky, Fredmonsky did not notify Cummings of her right to file a workers' compensation ("BWC") claim. ("Fredmonskys' Failure To Notify Cummings Of Her Right To File A BWC Claim").

153. Fredmonsky had a duty to assist Cummings, who sustained Work-Related Injuries resulting from her Work-Related Accident, in the preparation and submission of reports for BWC compensation and/or BWC benefits.

154. Because Cummings' injuries were disabling, Fredmonsky should have completed the first report of injury on behalf of Cummings because Cummings was unable to complete the first report of injury because of her physical Disability.



155. Fredmonsky breached the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits when she refused to assist Cummings in the preparation and submission of reports for BWC compensation and/or BWC benefits.

156. Fredmonskys' Justification For Refusing To Complete A First Report of Injury was a breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits.

157. Fredmonskys' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits resulted in the denial and/or delay of receipt of BWC benefits to Cummings.

158. Alternatively, Fredmonskys' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits, denied and/or delayed Cummings' BWC benefits.

159. Fredmonskys' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits was workers' compensation discrimination.

160. Fredmonskys' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits was workers' compensation discrimination done intentionally.

161. Fredmonskys' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits was workers' compensation discrimination done willingly.

162. Fredmonskys' breach of the Employer's Duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits was workers' compensation discrimination done knowingly.



163. Defendants are liable to Cummings for any and all damages resulting from Fredmonskys' breach of the Employer's duty To Assist Employees In Preparation Of Reports For Compensation And/or Benefits.

164. Fredmonsky violated BWC Rules when he failed to complete the first report of injury on behalf of Cummings while Cummings was unable to complete the first report of injury for herself because of her physical Disability.

165. Fredmonskys' violation of BWC Rules by failing to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for herself because of her physical Disability, was workers' compensation discrimination.

166. Fredmonskys' violation of BWC Rules by failing to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for herself because of her physical Disability, was workers' compensation discrimination done intentionally.

167. Fredmonskys' violation of BWC Rules by failing to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for herself because of her physical Disability, was workers' compensation discrimination done willingly.

168. Fredmonskys' violation of BWC Rules by failing to complete the first report of injury on behalf of an injured, disabled, Cummings, while unable to complete the first report of injury for herself because of her physical Disability, was workers' compensation discrimination done knowingly.

169. Defendants are liable to Cummings for any and all damages resulting from Fredmonskys' refusal to complete the first report of injury on behalf of an injured, disabled, Cummings,



while unable to complete the first report of injury for herself because of her physical Disability.

170. Fredmonsky was required by BWC Rules to obtain witness statements from Nancy Boil because Nancy was a witness who assisted Cummings in Cummings' Work-Related Accident.

171. Fredmonsky failed to obtain a witness statement from Nancy Boil.

172. Quick's Failure To Obtain Witness Statements from Nancy Boil was a violation of BWC requirements.

173. Fredmonskys' Failure To Obtain Witness Statements from Nancy Boil was a violation of BWC requirements done intentionally.

174. Fredmonskys' Failure To Obtain Witness Statements from Nancy Boil was a violation of BWC requirements done willingly.

175. Fredmonskys' Failure To Obtain Witness Statements from Nancy Boil was a violation of BWC requirements done knowingly.

176. Fredmonskys' Failure to Obtain Witness Statements from other witnesses was workers' compensation discrimination.

177. Fredmonsky failed to obtain witness statements from other witnesses who may have witnessed Cummings' Work-Related Accident.

178. Fredmonskys' Failure to Obtain Witness Statements from other witnesses who may have witnessed Cummings' Work-Related Accident was workers' compensation discrimination done intentionally.

179. Fredmonskys' Failure to Obtain Witness Statements who may have witnessed Cummings' Work-Related Accident was workers' compensation discrimination done willingly.

The Employee's Attorney.™



180. Fredmonskys' Failure to Obtain Witness Statements who may have witnessed Cummings' Work-Related Accident was workers' compensation discrimination done knowingly.

181. Fredmonsky failed to obtain witness statements from other witnesses who may have assisted Cummings during her Work-Related Accident.

182. Defendants are liable to Cummings for any and all damages resulting from Fredmonskys' Failure To Obtain Witness Statements from other witnesses who may have witnessed Cummings' Work-Related Accident.

### G. Cummings' Work-Related Injuries Worsen. Two Different Doctors Extend Her Time Off. Fredmonsky Downplays Cummings' Work-Related Injuries.

183. On or about June 2, 2020, Cummings' back injury became worse and she again returned to urgent care for medical treatment. ("Worsened Work-Related Injuries").

184. As a result of Cummings' Worsened Work-Related Injuries, Cummings' doctor extended her time off work and provided Cummings with supporting medical documentation.

185. As a result of Cummings' Lost Time Off No. 2, Cummings notified Fredmonsky that her doctor placed her off work for an extended period. ("Notice To Defendants Of Lost Time Off No.2").

186. In response to Cummings' Notice To Defendants Of Lost Time Off No. 2, Fredmonsky failed to Notify Cummings of her BWC Rights. ("Failure To Notify Cummings Of Her BWC Rights").

187. Fredmonsky's Failure To Notify Cummings Of Her BWC Rights is workers' compensation discrimination.

188. Fredmonsky's Failure To Notify Cummings Of Her BWC Rights is workers' compensation discrimination done intentionally.

The Employee's Attorney.™



189. Fredmonsky's Failure To Notify Cummings Of Her BWC Rights is workers' compensation discrimination done willingly.

190. Fredmonsky's Failure To Notify Cummings Of Her BWC Rights is workers' compensation discrimination done knowingly.

191. In response to Cummings' Notice To Defendants Of Lost Time Off No. 2, Fredmonsky failed to Notify Cummings that by filing a BWC claim, once approved, her lost time off would be paid by BWC. ("Failure To Notify Cummings To File A BWC Claim").

192. In response to Cummings Notice To Defendants Of Lost Time Off No. 2, Fredmonsky's failure to Notify Cummings To File A BWC Claim is workers' compensation discrimination.

193. In response to Cummings Notice To Defendants Of Lost Time Off No. 2, Fredmonsky's failure to Notify Cummings To File A BWC Claim is workers' compensation discrimination done intentionally.

194. In response to Cummings Notice To Defendants Of Lost Time Off No. 2, Fredmonsky's failure to Notify Cummings To File A BWC Claim is workers' compensation discrimination done willingly.

195. In response to Cummings Notice To Defendants Of Lost Time Off No. 2, Fredmonsky's failure to Notify Cummings To File A BWC Claim is workers' compensation discrimination done knowingly.

196. As a result of Cummings' Lost Time Off No. 2, Cummings provided Fredmonsky with supporting medical documentation.

197. In response to Cummings' Lost Time Off No. 2, Fredmonsky told Cummings, "Your back can't be that messed up!" ("Your Back Can't Be That Messed Up Comment.").



198. In response to Cummings' Lost Time Off No. 2, Fredmonsky pressured Cummings to go to a different doctor at Access Point and leave her doctor at urgent care. ("Pressuring Cummings To Switch Doctors").

199. Fredmonskys' Pressuring Cummings To Switch Doctors was done in hopes that a different doctor would find that Cummings' Work-Related Injuries were not as serious as the urgent care doctor had opined.

200. Fredmonsky's Pressuring Cummings To Switch Doctors is workers' compensation discrimination.

201. Fredmonsky's Pressuring Cummings To Switch Doctors is workers' compensation discrimination done intentionally.

202. Fredmonsky's Pressuring Cummings To Switch Doctors is workers' compensation discrimination done willingly.

203. Fredmonsky's Pressuring Cummings To Switch Doctors is workers' compensation discrimination was knowingly.

204. Alternatively, Cummings was eligible to have her Lost Time Off No. 2 covered under the FMLA.

205. Alternatively, Fredmonsky failed to cover Cummings' Lost Time Off No. 2 under the FMLA.

206. Alternatively, Fredmonsky's failure to cover Cummings' Lost Time Off No. 2 under the FMLA was FMLA Interference and FMLA Retaliation.

207. Alternatively, Fredmonsky's failure to cover Cummings' Lost Time Off No. 2 under the FMLA was FMLA Interference and FMLA Retaliation done intentionally.

208. Alternatively, Fredmonsky's failure to cover Cummings' Lost Time Off No. 2 under the FMLA was FMLA Interference and FMLA Retaliation done willingly.



209. Alternatively, Fredmonsky's failure to cover Cummings' Lost Time Off No. 2 under the FMLA was FMLA Interference and FMLA Retaliation done knowingly.

**H.** **At Fredmonsky's Pressuring, Cummings Switches Doctors And Placed Off Work For Three Additional Days. Cummings Exhausts Personal Leave And Requests That Her Doctor Return Her to Work Without Restrictions.**

210. In response to Fredmonskys' Pressuring Cummings To Switch Doctors, Cummings left her Doctor at urgent care and went to an Access Point doctor who placed her off work for three additional days, referred her to a specialist, and returned her back to work without restrictions on June 10, 2020. ("Lost Time Off No. 3").

211. Cummings requested of her doctor to return her to work without work restrictions because she had exhausted her PTO and had no income to sustain herself.

212. Cummings notified Fredmonsky of her Lost Time Off No. 3. ("Notice To Defendants Of Lost Time Off No. 3").

213. In response to Cummings' Notice To Defendants Of Lost Time Off No. 3, Fredmonsky failed to Notify Cummings of her BWC Rights. ("Failure To Notify Cummings Of Her BWC Rights").

214. Fredmonsky's Failure To Notify Cummings Of Her BWC Rights is workers' compensation discrimination.

215. Fredmonsky's Failure To Notify Cummings Of Her BWC Rights is workers' compensation discrimination done intentionally.

216. Fredmonsky's Failure To Notify Cummings Of Her BWC Rights is workers' compensation discrimination done willingly.

217. Fredmonsky's Failure To Notify Cummings Of Her BWC Rights is workers' compensation discrimination done knowingly.

The Employee's Attorney.™



218. In response to Cummings' Notice To Defendants Of Lost Time Off No. 3, Fredmonsky failed to Notify Cummings that by filing a BWC claim, once approved, her lost time off would be paid by BWC. ("Failure To Notify Cummings To File A BWC Claim").

219. In response to Cummings' Notice To Defendants Of Lost Time Off No. 3, Fredmonsky's failure to Notify Cummings To File A BWC Claim is workers' compensation discrimination.

220. In response to Cummings' Notice To Defendants Of Lost Time Off No. 3, Fredmonsky's failure to Notify Cummings To File A BWC Claim is workers' compensation discrimination done intentionally.

221. In response to Cummings' Notice To Defendants Of Lost Time Off No. 3, Fredmonsky's failure to Notify Cummings To File A BWC Claim is workers' compensation discrimination done willingly.

222. In response to Cummings' Notice To Defendants Of Lost Time Off No. 3, Fredmonsky's failure to Notify Cummings To File A BWC Claim is workers' compensation discrimination done knowingly.

223. Alternatively, Fredmonsky failed to cover Cummings' Lost Time Off No. 3 under the FMLA.

224. Alternatively, Fredmonsky's failure to cover Cummings' Lost Time Off No. 3 under the FMLA was FMLA Interference and FMLA Retaliation.

225. Alternatively, Fredmonsky's failure to cover Cummings' Lost Time Off No. 3 under the FMLA was FMLA Interference and FMLA Retaliation done intentionally.

226. Alternatively, Fredmonsky's failure to cover Cummings' Lost Time Off No. 3 under the FMLA was FMLA Interference and FMLA Retaliation done willingly.

227. Alternatively, Fredmonsky's failure to cover Cummings' Lost Time Off No. 3 under the FMLA was FMLA Interference and FMLA Retaliation done knowingly.

The Employee's Attorney.™



Sandra Kurt, Summit County Clerk of Courts

CV-2021-01-0265    O'BRIEN, TAMMY    01/25/2021 12:24:46 PM    CMCO    Page 26 of 33

### I. Cummings Returns To Work Without Restrictions And Becomes Totally Disabled. Cummings' Provides Medical Documentation And FMLA Documentation To Fredmonsky. Fredmonsky Terminates Cummings.

228. On June 10, 2020, Cummings returned to work without restrictions. ("Return To Work Without Work Restrictions").

229. During Cummings' Return To Work Without Work Restrictions, Cummings worked on June 10, 11, 12, 2020 and June 13, 2020.

230. As a result of Cummings' Return To Work Without Work Restrictions, on June 13, 2020, by the end of Cummings' workday, Cummings' could barely move because pain engulfed her body. ("Cummings Becoming Totally Disabled").

231. As a result of Cummings Becoming Totally Disabled, Cummings visited a back specialist who faxed Defendants copies of Cummings' medical excuse and FMLA documents covering the entire period of time she was off work from May 29, 2020 to August 7, 2020. ("Doctor's Faxed Medical Excuse and FMLA Documents").

232. Cummings returned to work on August 10, 2020 and visited HR to inform Fredmonsky that she had additional medical appointments to attend and to cover under her FMLA. ("Visit to HR To Provide Notice Of Medical Appointments To Be Covered Under FMLA").

233. In response to Cummings' Visit to HR To Provide Notice of Medical Appointments To Be Covered Under FMLA, Fredmonsky told Cummings that her FMLA documents were "fake."

234. In response to Cummings' Visit to HR To Provide Notice Of Medical Appointments To Be Covered Under FMLA, Fredmonsky told Cummings that her Doctor's Faxed Medical Excuse and FMLA Documents were fake.

235. On August 12, 2020, Fredmonsky terminated Cummings' employment with Defendants. ("Terminating Cummings' Employment").



Sandra Kurt, Summit County Clerk of Courts

236. Defendants' Terminating Cummings' Employment was an adverse employment action.

237. Defendants' Terminating Cummings' Employment was an adverse employment action done intentionally.

238. Defendants' Terminating Cummings' Employment was an adverse employment action done willingly.

239. Defendants' Terminating Cummings' Employment was an adverse employment action done knowingly.

240. As justification for Terminating Cummings' Employment, Fredmonsky told Cummings that she was being terminated due to her attendance. ("Justification for Terminating Cummings' Employment").

241. Defendants' Justification For Terminating Cummings' Employment did not actually motivate Defendants' decision to terminate Cummings.

242. Defendants' Justification For Terminating Cummings' Employment was insufficient to motivate Defendants' decision to terminate Cummings.

243. Defendants' Justification For Terminating Cummings' Employment was pretext for terminating Cummings.

244. Defendants' Terminating Cummings' Employment was workers' compensation discrimination.

245. Defendants' Terminating Cummings' Employment was FMLA Interference and FMLA Retaliation.

The Employee's Attorney.™



## COUNT I: WORKER'S COMPENSATION RETALIATION IN VIOLATION OF R.C. 4123.90

### (As to Defendant Ferriot Only)

246. Cummings restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

247. At all times relevant, Cummings was an employee under R.C. 4123.01(A).

248. At all times relevant, Defendants was an employer under R.C. 4123.01(B).

249. Cummings was injured on the job while working for Ferriot on or about May 27, 2020.

250. Defendants violated R.C. 4123.90 by terminating Cummings after Cummings suffered a work-related injury.

251. Defendants violated R.C. 4123.90 by terminating Cummings after suffered a work-related injury for which she was entitled to workers' compensation.

252. Other similarly situated employees who did not suffer a work-related injury were not terminated without cause.

253. Other similarly situated employees who were not injured on the job were not terminated without cause.

254. Defendants violated R.C. 4123.90 when they failed to notify Cummings of her right to workers' compensation benefits.

255. Defendants violated R.C. 4123.60 when they failed to make a first report of injury when Cummings was injured.

256. Defendants violated R.C. 4123.90 when they failed to obtain witness statements when Cummings was injured.

257. Defendants willfully retaliated and discriminated against Cummings in violation of R.C. 4123.90.



The Employee's Attorney.™

258. As a direct and proximate cause of Defendants' conduct, Cummings suffered and will continue to suffer damages.

259. Prior to being terminated, Cummings provided written notice to Defendants of his intent to

260. As a direct and proximate cause of Defendants' conduct, Cummings is entitled to all damages provided for in R.C. 4123.90 including liquidated damages, costs, and reasonable attorneys' fees.

### COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
**(As to Defendant Ferriot Only)**

261. Cummings restates each and every prior paragraph of this Complaint as if it were fully restated herein.

262. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee to avoid a Workers' Compensation claim.

263. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he engages in protected activity under Ohio law.

264. Specifically, in *Sutton v. Tomco Machine*, 129 Ohio St.3d 153, 163 (2011), the Ohio Supreme Court noted, "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim."

265. Defendants' termination of Cummings jeopardizes the public policies in *Sutton*.

266. Defendants' termination of Cummings was motivated by conduct related to these public policies in *Sutton*.



267. Defendants had no overriding business justification for terminating Cummings. As a direct and proximate result of Defendants' conduct, Cummings has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS
**(As to All Defendants)**

268. Cummings restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

269. Pursuant to 29 U.S.C. 2601 et seq., covered employers are required to provide employees job-protected, unpaid leave for qualified medical and family situations.

270. Pursuant to Section 105 of the FMLA and Section 825.220 of the FMLA regulations prohibit an employer from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right.  An employer is prohibited from discriminating or retaliating against an employee for having exercised or attempted to exercise any FMLA right.  Any violations of the FMLA or the Department's regulations constitute interfering with, restraining or denying the exercise of rights provided by the FMLA.

271. Upon belief and information, Defendant is a covered employer under the FMLA.

272. On three separate occasions, Defendants failed to provide Cummings' absences, resulting from a work-related injury, under FMLA.

273. Defendants failed to inform Cummings that she was eligible for FMLA coverage.

274. Defendants unlawfully interfered with Lyons' exercise of her rights under the FMLA in violation of Section 105 of the FMLA and Section 825.220 of the FMLA regulations.

275. Defendants violated the FMLA when they terminated Cummings' employment for exercising her rights to use FMLA to cover her own serious health conditions.



276. Defendants' interference with Lyons' FMLA rights was an attempt to discourage Cummings from using FMLA and in violation of Section 105 of the FMLA and Section 825.220 of the FMLA regulations.

277. Defendants' discouragement attempts interfered with, restrained, and denied Cummings of the free exercise and/or the attempt to exercise her statutory rights to FMLA.

278. As a direct and proximate result of Defendants' conduct, Cummings is entitled to any all damages, including liquidated damages, costs, and reasonable attorney's fees.

<u>**COUNT IV: RETALIATION IN VIOLATION OF THE FMLA**</u>
**(As to All Defendants)**

279. Cummings restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

280. Section 2615 of the FMLA prohibits employers from discharging, discriminating or otherwise retaliating against an employee for exercising her rights under the FMLA.

281. Section 2615 of the FMLA provides that employer shall be required to pay the eligible employee damages in the form of lost wages (plus interest), as well as liquidated damages equal to the sum of the amount of the lost wages plus the interest.

282. Defendants retaliated against Cummings by terminating her employment after she requested to use FMLA leave.

283. Defendants retaliated against Cummings by terminating her employment for her continued use of FMLA leave to cover past and future medical appointments.

284. Defendants willfully retaliated against Cummings in violation of 29 U.S.C. 2615(a).

285. As a direct and proximate result of Defendants' wrongful conduct, Cummings is entitled to all damages provided for in 29 U.S.C. 2617, including liquidated damages, costs, and reasonable attorneys' fees.



## DEMAND FOR RELIEF

WHEREFORE, Cummings demands from Defendants the following:

a)  Issue an order requiring Defendants to restore Cummings to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

b)  An award against each Defendant of compensatory and monetary damages to compensate Cummings for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

c)  An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

d)  An award of reasonable attorneys' fees and non-taxable costs for Cummings' claims as allowable under law;

e)  An award of the taxable costs of this action; and

f)  An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Brian D. Spitz
Brian D. Spitz (0068816)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com

*Attorney for Plaintiff Erin Cummings*



Sandra Kurt, Summit County Clerk of Courts

## JURY DEMAND

Plaintiff Erin Cummings demands a trial by jury by the maximum number of jurors permitted.

<div style="margin-left: 50%;">

/s/ Brian D. Spitz
Brian D. Spitz (0068816)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:  (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com


*Attorney for Plaintiff Erin Cummings*

</div>



Sandra Kurt, Summit County Clerk of Courts